## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## AT MEMPHIS

| | | |
|---|---|---|
| BARBARA STEWART, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| HARTFORD LIFE AND ACCIDENT | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| FEDERAL EXPRESS | § | |
| CORPORATION, | § | |
| | § | |
| and, | § | |
| | § | |
| THE FEDERAL EXPRESS | § | |
| CORPORATION LONG TERM | § | |
| DISABILITY PLAN, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

**COMES NOW**, Plaintiff Barbara Stewart, and makes the following representations to the Court for the purpose of obtaining relief from Defendants' refusal to pay long-term disability benefits due under an employee benefits plan under ERISA, and for Defendants' other violations of the Employee Retirement Income Security Act of 1974 ("ERISA").

## JURISDICTION AND VENUE

1. This Court's jurisdiction over the Plaintiff's claims for long term disability benefits is invoked under federal question jurisdiction pursuant to 28 U.S.C. § 1331 and § 1337 and under the express jurisdiction found in the ERISA statute under 29 U.S.C. § 1132(e) (ERISA § 502(e)).

2. Plaintiff's claims "relate to" an "employee welfare benefits plan" or "plans" as defined by ERISA, 29 U.S.C. § 1001 *et seq.*, and the subject disability benefit plans constitutes a "plan under ERISA."

3. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal appeal of benefits denials.

4. In this case, the aforementioned avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

5. Venue is proper within the Western District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES AND AFFILIATES

6. Plaintiff, Barbara Stewart (hereinafter "Plaintiff" or "Ms. Stewart"), is currently a resident of Albany, Georgia.

7. Plaintiff's employer, Federal Express Corporation, is an American multinational conglomerate holding company focused on transportation, e-commerce and business services based in Memphis, Tennessee. Federal

Express Corporation may be served with process through its registered agent, CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546, or at Federal Express Corporation's principal office, 3610 Hacks Cross Road, Memphis, Tennessee 38125-8800.

8. The Federal Express Corporation Long Term Disability Plan, is and at all relevant times was, an "employee welfare benefit plan" as defined by ERISA.

9. Federal Express Corporation, acting through its Employees Benefits Department of FedEx Corporate Services, Inc., is the named Plan Sponsor and Plan Administrator of The Federal Express Corporation Long Term Disability Plan.

10. The Federal Express Corporation Long Term Disability Plan may be served with process through its Plan Sponsor, Federal Express Corporation, via said Plan Sponsor's registered agent, CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546, or at Federal Express Corporation's principal office, 3610 Hacks Cross Road, Memphis, Tennessee 38125-8800.

11. Aetna Life Insurance Company (hereinafter "Aetna") was initially the Claims Paying Administrator of the long-term disability Plan.

12. On or about October 23, 2017, Hartford Life and Accident Insurance Company acquired Aetna's group disability insurance business.

13. Effective April 1, 2020, the Plan designated Hartford Life and Accident Insurance Company as the Claims Paying Administrator.

14. The Federal Express Corporation Long Term Disability Plan is self-funded by a trust created by Federal Express Corporation for the purpose of paying benefits under the plan.

15. Alternatively, Hartford Life and Accident Insurance Company is the party obligated to determine eligibility for benefits under the Plan.

16. Defendant Hartford Life and Accident Insurance Company (hereinafter "Hartford") was the entity responsible for processing claims and adjudicating appeals regarding long-term disability benefits under the Plan and has the sole and exclusive discretion respecting all matters relating to the eligibility of a claimant for benefits under the Plan.

17. Hartford is an insurance company authorized to transact the business of insurance in this State and may be served with process by and through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243-1121.

## FACTS

18. Federal Express Corporation is an American multinational conglomerate holding company focused on transportation, e-commerce and business services based in Memphis, Tennessee.

4

19. Federal Express Corporation sponsors various employee benefit plans for its employees, including The Federal Express Corporation Long Term Disability Plan (hereinafter "Plan").

20. The Plan is self-funded by a trust created by Federal Express Corporation for the purpose of paying benefits under the plan.

21. Alternatively, Hartford Life and Accident Insurance Company is the party obligated to determine eligibility for benefits under the Plan.

22. Plaintiff was a participant in the Plan by virtue of his employment with Federal Express Corporation.

23. Plaintiff worked for Federal Express Corporation as a Courier.

24. The Plan provides eligible employees with disability income protection as defined by the Plan.

25. The Plan is governed by ERISA.

26. Plaintiff began working for Federal Express Corporation on October 22, 2016.

27. Plaintiff's last day of work at Federal Express Corporation was July 31, 2020.

28. The Plaintiff ceased work on July 31, 2020, due to a disability while covered under the Plan.

29. The Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

30. The Plaintiff timely filed an application for benefits under the Plan, was subsequently denied benefits, Plaintiff timely appealed, and Hartford issued its final denial on April 11, 2023.

31. In its April 11, 2023, letter, Hartford admitted the following: that Plaintiff had difficulty doing ADLs such as cleaning her home and talking due to shortness of breath; an office note from cardiologist Dr Harris indicated Plaintiff had a history of dilated cardiomyopathy, hypertension, hypokalemia and hypomagnesemia; she was noted to be status post BIV ICD (biventricular implantable cardioverter defibrillator); she had difficulty walking down her driveway secondary to dyspnea and was retaining fluid due to significant weight gain; she reported palpitations; a review of symptoms was positive for lower extremity edema and shortness of breath; an echocardiogram demonstrated an ejection fraction of 20-25% with severe global hypokinesis; a cardiac MRI showed moderately dilated LV, severely reduced LV function and an ejection fraction of 16%; an assessment noted the Plaintiff was in the New York Heart Association Class II and required cardiac rehabilitation; Hartford's medical consultant admitted Plaintiff had heart failure Class II-III (Class III means marked limitation in activity due to symptoms, even during less-than-ordinary activity, e.g. walking short distances (20—100 m), and comfortable only at rest), due to nonischemic cardiomyopathy and that

shortness of breath is a symptom of heart failure when exertional, and that Plaintiff was subject to fatigue as a manifestation of her heart failure.

32. In accordance with the review procedures set forth in the Plan, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1, Plaintiff appealed the claim until exhausting the required plan appeals.

33. Having submitted his appeal, and as confirmed by Hartford, Plaintiff exhausted her administrative remedies.

34. Based on the terms of the insurance policy, Plaintiff's complaint is timely and is not otherwise time barred.

35. The relevant long-term disability policy in this matter defines disability as an inability of a covered employee, because of a medically determinable physical or functional impairment (other than an impairment caused by a mental or nervous condition or a Chemical Dependency), to engage in any compensable employment for twenty-five hours per week.

36. Plaintiff is entitled to long term disability benefits as she has met the long-term disability Plan's requirements, and her disability continues to prevent her from engaging in any compensable employment for twenty-five hours per week.

37. The policy does not require objective medical evidence for proof of claim.

38. If disabled pursuant to the terms of the policy, Plaintiff, who was found

disabled as of July 31, 2020, was paid short-term disability benefits through January 28, 2021, and paid long-term disability benefits through February 7, 2023, is entitled to a monthly gross long-term disability benefit of $1,996.80, offset by a monthly Social Security disability benefit of $860.00 (there are no auxiliary beneficiaries), for a net monthly long-term disability benefit of $1,136.80 from February 8, 2023, to October 11, 2038.    Accordingly, Plaintiff is owed $15,313.27 in back benefits, $141,024.43 in future benefits (using 5.0% to discount to net present value), with no overpayment owed, for a total long-term disability benefit of $156,337.70.

39. Evidence submitted by Plaintiff to Hartford supporting her disability includes, *inter alia*, the following:" the Plaintiff has a history of heart failure due to nonischemic dilated cardiomyopathy, anemia, hypertension, cholecystectomy, GERD, Hodgkin lymphoma (treated with chemotherapy), and hypercholesterolemia.  An echocardiogram demonstrated an ejection fraction of 20-25% with severe global hypokinesis; a cardiac MRI showed moderately dilated LV, severely reduced LV function and an ejection fraction of 16%; an assessment noted the Plaintiff was in the New York Heart Association Class II and required cardiac rehabilitation; and even Hartford's medical consultants admitted Plaintiff had heart failure Class II-III. Additionally, Plaintiff's cardiologist, Rachel Harris, M.D., indicated that

although Plaintiff might have some sedentary functionality, a CHF exacerbation would preclude this.

40. Job preclusive vocational limitations include, *inter alia*, needing additional, unscheduled work breaks, chronic absenteeism, and being off task more than 10% of the work period. *Johnson v. Saul*, 2019 WL 6876012, at *3 (E.D. Mo., 2019); *Ricardo C. v. Saul*, 2019 WL 4034484, at *2 (N.D. Ill., 2019); *Hicks v. Commissioner of Social Security*, 2016 WL 2605234, at *4 (E.D. Mich., 2016); *Mershad v. Commissioner of Social Security*, 2016 WL 659307, at *12 (S.D. Ohio, 2016); *Coffman v. Commissioner of Social Security*, 2015 WL 9311522, at *3 (E.D. Mich., 2015); *Williams v. Commissioner of Social Sec.*, 2013 WL 3771381, at *6 (E.D. Mich., 2013).

41. An ability to perform the duties of an occupation requires reliability, consistency, substantial capacity, psychological stability, and steady attendance. *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir. 1980); *Tippitt v. Reliance Std. Life Ins. Co.*, 457 F.3d 1227, 1236 (11th Cir. 2006); *McIntyre-Handy v. APAC Customer Services, Inc.*, 2005 WL 5369158, *6 (E.D. Va. 2005); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994).

42. None of Plaintiff's reported activities, or activities attributed to her, were inconsistent with her disability. Additionally, consideration must be given

regarding the modifications and help a plaintiff requires for activities. *Hoover v. Berryhill*, 2017 WL 5494565, at \*4 (N.D. Ind. Nov. 16, 2017); *Diedrich v. Berryhill*, 874 F.3d 634, 642-643 (9th Cir. 2017 (court improperly took note of certain daily activities that plaintiff could perform, such as bathing, cooking, taking care of her cat, chores around the house, shopping, paying bills, and using a checkbook, but ignored other evidence showing the difficulties plaintiff faced in everyday life); *Brown v. Commissioner Social Security Administration*, 873 F.3d 251, 269-270 (4th Cir. 2017) (court noted various of plaintiff's activities such as cooking, driving, doing laundry, collecting coins, attending church and shopping, but failed to acknowledge the limited extent of those activities as described by the plaintiff or explain how those activities showed that he could sustain a full-time job); *Herrold v. Colvin*, 2015 WL 1243293, at \*6 (N.D. Ind. Mar. 17, 2015) (7th Circuit repeatedly criticizes credibility determinations based on a plaintiff's ability to take care of her personal hygiene, children, or household chores) (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); and *Blow v. Astrue*, 2012 WL 3233621, at \*9 (N.D. Ind. Aug. 6, 2012) (finding improper reliance on daily activities when others performed almost all of the household chores and any activities the plaintiff could perform were at a slower pace with frequent breaks).

43. Hartford relied on medical consultants, for file reviews during the administrative appeal of Plaintiff's disability claim and said consultants opined, *inter alia*, that Plaintiff had minor impairments which had no meaningful impact on her functionality without addressing her work reliability, consistency, substantial capacity, and steady attendance and dismissed her subjective complaints.  These medical consultants worked for Professional Disability Associates ("PDA") via Brown & Brown Insurance Absence Services Group (Steven Borzak, M.D.), and Network Medical Review Co., Ltd. (Brian Strizik, M.D.).

44. Regarding Professional Disability Associates ("PDA"), it has had a website which revealed that it advertises and solicits business from insurers, reinsurers and third-party administrators based upon a promise of providing "assessment of disability claims" which will "reduce to manageable proportions the seemingly infinite specter of exposure such claims carry." Further, PDA requests a "long term relationship" with such insurers, reinsurers and third-party administrators.  *See*, *e.g.*, *Browning v. Ohio Valley Electric Corporation Long-Term Disability Income Policy*, Case No. 3:06-0861 (S.D.W. Va.).  The conflict is obvious.

45. With respect to Network Medical Review Co., Ltd., it works for disability insurance companies like Hartford.  For example, in *Barbara Cosgrove v.*

*MetLife*, Civil Action No.: 5:06-CV-2107-VEH, an ERISA disability matter, MetLife answered interrogatories regarding information on claims reviewed by NMR and payments made by MetLife to NMR. MetLife provided the following information: in 2002, 286 claims were referred and MetLife paid NMR $174,485; in 2003, 922 claims were referred and MetLife paid NMR $586,305; in 2004, $1,500 claims were referred and MetLife paid NMR $934,690; in 2005, 3,209 claims were referred and MetLife paid NMR $2,063,890; and in 2006, 4,441 claims were referred and MetLife paid NMR $2,780,795. Again, the conflict of interest is obvious.

46. There are no challenges to Plaintiff's credibility. In other words, Plaintiff's treating physicians have directly addressed her reliability, consistency, substantial capacity, psychological stability, and steady attendance. Hartford's medical consultants have failed to substantively account for, much less address, any of these issues. Accordingly, Plaintiff has satisfied her obligations of providing proof of her disability under the policy.

47. Hartford's medical consultants ignored and dismissed Plaintiff's subjective complaints. Ignoring evidence of pain or other disabling conditions because it is subjective is arbitrary and capricious. *Miles v. Prudential Life Insurance Co.*, 720 F.3d 472, 486 (2d Cir. 2013).

48. There is no requirement in the instant policy that Plaintiff provide *only* objective medical evidence or other objective indica of disability. Since the policy does not say it, Hartford does not have the authority to require it. *See*, *e.g.*, 29 U.S.C. § 1104(a)(1)(d); *Fifth Third Bancorp. v. Dudenhoeffer*, 134 S.Ct. 2459, 2468 (2014), *Salomaa v. Honda*, 642 F.3d 666, 678 (9th Cir. 2011); *Carradine v. Barnhart,* 360 F.3d 751,755 (7th Cir. 2004); *Abdullah v. Accentcare Long Term Disability Plan*, 2012 WL 4112291 *11 (N.D. Cal); *Krupp v. Liberty Life Assurance Company of Boston*, 936 F.Supp.2d 908, 917 (N.D. Ill. 2013).

49. The instant policy allows for independent medical examinations and functional capacity examinations. Hartford's investigation consisted of only file reviews by medical consultants. Non-examining evidence has little value in evaluating pain, fatigue or impaired focus, concentration, or cognition. *See*, *e.g.*, *Kalish v. Liberty Mutual*, 419 F. 3d 501, 508 (6th Cir. 2005); *Calvert v. Firstar Finance, Inc.*, 409 F. 3d 286, 295 (6th Cir. 2005); *Smith v. Aetna*, 312 F. Supp. 2d 942, 954 (S.D. Ohio 2004); *Meyer v. MetLife*, 341 F. Supp. 2d 865 (S.D. Ohio 2004); *Black v. Unum Life Insurance Company of America*, 324 F. Supp. 2d 206, 215 fn.8 (D. Me. 2004).

50. The Plan contained an "offset" provision that required Plaintiff to apply to the Social Security Administration for benefits. If she won her Social

Security case, then not only are future benefits from the Plan reduced by the amount of the monthly check from Social Security, but to the extent that any back benefits from Social Security overlap with benefits the Plan has already paid, the Plan gets to recoup these benefits from the Plaintiff. Plaintiff applied for Social Security disability benefits which were subsequently granted. Hartford provided Plaintiff a vendor named Allsup to help Plaintiff with pursuing her Social Security disability and Allsup obtained from the Social Security Administration a grant of disability benefits for Plaintiff indicating Plaintiff was disabled from all work.

51. The Plaintiff has now exhausted her required administrative remedies for her long-term disability benefits under the Plan pursuant to ERISA or such administrative remedies are deemed exhausted and/or her long-term disability benefits are deemed denied.

52. The Court's standard of review for the ERISA claims is *de novo* under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

53. The entity that chose to deny long term disability benefits would pay any such benefits due out of its own funds.

54. Hartford was a claims decision-maker under a perpetual conflict of interest because the long-term disability benefits would have been paid out of its own funds.

55. The Plan was a claims decision-maker under a perpetual conflict of interest because the long-term disability benefits would have been paid out of its own funds.

56. Hartford allowed its concern over its own funds to influence its decision-making.

57. The Plan allowed its concern over its own funds to influence its decision-making.

58. Defendants have acted under a policy to take advantage of the potential applicability of ERISA to claims.

59. Defendants' administrative process did not provide Plaintiff with a full and fair review; by way of example, its denial letters did not contain the specific reasons for the denial and did not advise Plaintiff of the information Defendants required in order to approve her continuing benefits.

60. The Plan and/or disability insurance policy does *not* provide Hartford with discretionary authority.

61. In the alternative, relevant state law bans any such clause purporting to confer Hartford with discretionary authority.

62. At all times relative hereto, Hartford has been operating under an inherent and structural conflict of interest because any monthly benefits paid to

Plaintiff are paid from Hartford's own assets with each payment depleting those same assets.

63. At all times relative hereto, the Plan has been operating under an inherent and structural conflict of interest because any monthly benefits paid to Plaintiff are paid from the Plan's own assets with each payment depleting those same assets.

64. Hartford has a history of biased claims administration. For example, in a case entitled *Julie Jacoby v. Hartford Life and Accident Insurance Company*, 07-cv-4627 (S.D. N.Y.), the court put down an order indicating Hartford's discovery "responses are a paradigm of discovery abuse" and required Hartford produce its BMS Claims Manual and SIU Reference Manual along with other documents without any protective order at all such that these documents are now properly part of the public domain and have been utilized in other litigation. These materials evidence a specific intent on Hartford's part to consider the monetary value of a claim in its evaluation process. This is an intent antithetical to its role as fiduciary to its disabled constituents. In one of the documents a Hartford employee admonishes another to try to do something else on a claim before Hartford has to pay 30 years of benefits. In another document a member of the medical team is praised for finding that a

disability claimant could do some type of work in a higher percentage of cases than her peer group.

65. As the party obligated to pay benefits and/or the administrator given discretion in construing and applying the provisions of the disability plan and assessing Plaintiff's entitlement to benefits, Hartford is an ERISA fiduciary.

66. Hartford and the Plan, an ERISA fiduciaries, will have to show they exercised care, skill, prudence, diligence, and loyalty solely for the benefit of Plaintiff like that borne by a trustee under common law. *See* § 1002(21)(A)(i) and (iii); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220, 124 S. Ct. 2488, 2502 (2004); *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 803 (7th Cir.), *cert. denied*, 130 S. Ct. 200 (2009).

67. Hartford and the Plan failed to satisfy their duties under ERISA as specified in paragraph 66 of this complaint.

68. Under ERISA, a fiduciary should fully investigate the relevant and applicable facts of any claim.

69. Hartford and the Plan failed to satisfy their duties under ERISA as specified in paragraph 68 of this complaint.

70. Under ERISA, a fiduciary should fairly consider all information obtained regarding a claim, including that which tends to favor claim payment or

continuation as well as that which tends to favor claim declination or termination.

71. Hartford and the Plan failed to satisfy their duties under ERISA as specified in paragraph 70 of this complaint.

72. Under ERISA, a fiduciary should consider the interests of its insured at least equal to its own and resolve undeterminable issues in its insured's favor.

73. Hartford and the Plan failed to satisfy their duties under ERISA as specified in paragraph 72 of this complaint.

74. Under ERISA, a fiduciary has the obligation to read, interpret and understand all of the pertinent medical information with sufficient clarity so as to be able to make a fair, objective, and thorough evaluation of its insured's claims for disability benefits.

75. Hartford and the Plan failed to satisfy their duties under ERISA as specified in paragraph 74 of this complaint.

76. Under ERISA, a fiduciary's denial of a claim should not be based on speculation.

77. Hartford and the Plan failed to satisfy their duties under ERISA as specified in paragraph 76 of this complaint.

78. Under ERISA, a fiduciary should be objective in its assessment of facts and not attempt to bias the claims investigation process in any manner.

79. Hartford and the Plan failed to satisfy their duties under ERISA as specified in paragraph 78 of this complaint.

80. Under ERISA, a fiduciary should not take into consideration the amount of money it would save if a particular claim or set of claims is denied, terminated, or otherwise not paid.

81. Hartford and the Plan failed to satisfy their duties under ERISA as specified in paragraph 80 of this complaint.

82. Under ERISA, a fiduciary should refrain from excessive reliance on in-house medical staff to support the denial, termination, or reduction of benefits.

83. Hartford and the Plan failed to satisfy their duties under ERISA as specified in paragraph 82 of this complaint.

84. Under ERISA, a fiduciary should not conduct unfair evaluation and interpretation of attending physicians' or independent medical examiners' reports.

85. Hartford and the Plan failed to satisfy their duties under ERISA as specified in paragraph 84 of this complaint.

86. Under ERISA, a fiduciary should evaluate the totality of its insured's medical conditions.

87. Hartford and the Plan failed to satisfy their duties under ERISA as specified in paragraph 86 of this complaint.

88. Under ERISA, a fiduciary has an obligation to conduct a fair, thorough, and objective review.

89. Hartford and the Plan failed to satisfy their duties under ERISA as specified in paragraph 88 of this complaint.

### CAUSE OF ACTION
### FOR PLAN BENEFITS AGAINST ALL DEFENDANTS
### PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

**PLAINTIFF** incorporates all the allegations contained in paragraphs 1 through 89 as if fully stated herein and says further that:

90. Under the terms of the Plan, Defendants agreed to provide Plaintiff with disability benefits in the event that Plaintiff became disabled and met the other requirements of the Plan.

91. Plaintiff has satisfied all of the requirements of the Plan for approval and receipt of a disability benefit.

92. Defendants failed to provide benefits due under the terms of the Plan and these denials of benefits to Plaintiff constitute breaches of the Plan.

93. The decisions to deny these benefits were wrong under the terms of the Plan.

94. The decisions to deny benefits and decision-making processes were arbitrary and capricious.

95. The decisions to deny benefits were not supported by substantial evidence in the record.

96. The decision-making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claims, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

97. The appellate procedures did not provide the Plaintiff a full and fair review.

98. As ERISA fiduciaries, the Defendants owed the Plaintiff fiduciary duties, such as an obligation of good faith and fair dealing, full and complete information, and a decision-making process free of influence by self-interest.

99. The Defendants violated the fiduciary duties owed to the Plaintiff.

100.    As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which she would have been entitled under the Plan, and continued benefits payable while the Plaintiff remains disabled under the terms of the Plan.

101.    As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff requests that this Court grant her the following relief in this case:

1. A finding in favor of Plaintiff against Defendants;

2. Damages in the amount equal to the disability income benefits to which she was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and post judgment interest;

4. An Order requiring the Defendants to pay continuing benefits into the future, so long as Plaintiff remains disabled under the terms of the Plan, as well as any other collateral benefits to which she might be entitled on the basis of being disabled under the Plan, in the future so long as Plaintiff remains disabled under the terms of the Plan;

5. Plaintiff's reasonable attorney fees and costs; and,

6. Such other relief as this Court deems just and proper.

Dated this 13ᵗʰ day of March, 2023.

By:    */s/D. Seth Holliday*
D. Seth Holliday
TN Bar No.: 023136
**MCMAHAN LAW FIRM, LLC**
700 S. Thornton Avenue
P.O. Box 1607
Dalton, Georgia 30722
(706) 217-6118
sholliday@mcmahanfirm.com
*Attorneys for Plaintiff*
